```
                UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF TENNESSEE
                      NASHVILLE DIVISION

BRIDGEPORT MUSIC, INC., et al., )
                                )
        Plaintiffs,             )
                                )
             v.                 )   NO.  3:01-0916
                                )   Judge Campbell/Brown
CRITED MUSIC, INC., et al.,     )   Jury Demand
                                )
        Defendants.             )
```

**TO: The Honorable Todd J. Campbell**

### REPORT AND RECOMMENDATION

**I. INTRODUCTION**

Presently pending before the Court is the defendants' motion for summary judgment on the grounds that the infringement claims are (1) barred by the statute of limitations, and (2) barred by the doctrine of laches, and that any claims for accounting and injunctive relief are derivative of the copyright infringement and declaratory relief claims, and therefore must also be dismissed (Docket Entry No. 112).

The matter has been extensively and voluminously briefed by the parties and it has been referred to the undersigned for a Report and Recommendation by the District Judge (Docket Entry No. 150). The matter is presently set for trial on November 24, 2006.

For the reasons stated below, the Magistrate Judge **recommends** that the motion for summary judgment be **denied**, inasmuch as it appears that there are sufficient factual disputes to render summary judgment inappropriate.

## II. BACKGROUND

As all parties are well aware, this is one of the cases arising out of the original case of <u>Bridgeport Music, Inc., et al. v. 11C Music, et al.</u>, Case No. 3:01-0412, a massive and unworkable piece of litigation. The first amended complaint, filed after the severance of the original case into some 477 separate cases (Docket Entry No. 14), was filed on September 28, 2001. Discovery and other pretrial litigation maneuvers proceeded at a vigorous pace until all further proceedings were stayed pending the outcome of the first 10 related cases on February 11, 2002 (Docket Entry No. 60).

During the stay, a settlement conference was held and subsequently the claims against a number of the defendants were resolved. The only defendant now remaining in this particular case is Universal-Songs of Polygram International, Inc. (USOP).

The stay was lifted in September 2004 (Docket Entry No. 79) for the limited and sole purpose of permitting the parties to propound written discovery through January 14, 2005. Judge Higgins subsequently lifted the stay for the limited and sole purpose of permitting the parties to take all depositions for the purpose of factual discovery by June 10, 2005 (Docket Entry No. 80).

The first amended complaint charged USOP with infringement of Bridgeport's copyright of the musical composition "You'll Like It Too." The first amended complaint alleges that a portion of "You'll Like It Too" was sampled, looped, and otherwise

2

used in some 10 works in some way connected to USOP.  The 10 works are as follows:

> "Paid In Full"
> "The 18th Letter"
> "In The Lab With DJ Nabs - the Live Album"
> "DJ Feelgood Presents the F111 House Session"
> "DJ DB Presents the Higher Education Drum and Bass Section"
> "Gunman (Original Soundtrack):
> "James Brown's Funky People, Pt. 2"
> "MVP Vintage Funk, Vol. 1"
> "The Bobby Bird"
> "Funk Box"

(First Amended Complaint, ¶ 65, Docket Entry No. 14).

Although the parties' briefs are less than clear and concise on this point, it now appears that 4 of the alleged infringing works, "James Brown's Funky People, Pt. 2," "MVP Vintage Funk, Vol. 1," "The Bobby Bird," and "Funk Box" do not contain any infringing materials but rather contain a recording of a James Brown composition, which Bridgeport admits is not infringing (Docket Entry No. 113, p. 9).[1]

The defendants further assert that the album, "The 18th Letter," does not include any infringing material and that they have never issued any licenses authorizing the use of infringing materials in the albums "DJ Feelgood Presents the F111 House Session," "DJ DB Presents the Higher Education Drum and Bass Section," and "In the Lab With DJ Nabs."

---

[1] Both counsel in their briefs refer to various depositions, admissions, etc., without giving the Court a docket entry for such pleadings.  Quite frankly, it is not the Court's duty to search the docket record for these various materials.  Counsel should refer to items by docket entry so the Court can find them.

3

The defendants further claim that the albums "Paid In Full" and "Gunmen," which were released in 1987 and 1994, respectively, were not manufactured, distributed, or sold by USOP, and that they did not issue any licenses authorizing the use of any copyrighted material owned by Bridgeport in either to those albums in the 3 years preceding the lawsuit. They state that their only involvement with these albums within the statute of limitations was the passive receipt and disbursement of royalties. The plaintiffs, in their response (Docket Entry No. 124, p. 8, fn 8), state that they did advise USOP on November 3, 2004, that they were not pursuing any claims with respect to the albums inadvertently included in the action, namely "James Brown's Funky People, Pt. 2," MVP Vintage Funk, Vol. 1" "The Bobby Bird," and "Funk Box." They contend that "The 18th Letter" does contain some of their material, since they contend there are at least 2 albums with this name with different product numbers (<u>see</u> Docket Entry No. 124, p. 9, fn 9).

The inclusion of 4 songs which admittedly are not involved in this case certainly does not show that the plaintiffs gave this matter the careful attention that Rule 11 would normally demand in filing a complaint. However, it does appear that they did correct the matter some 3 years after filing their case.

Songwriters Haskins, Simmons, Thomas, and Williams wrote the musical composition "You'll Like It Too" in 1980. These musicians, doing business as Key Funk Music, assigned their publishing interest in the composition "You'll Like It Too" to

4

Bridgeport in August 1993. On July 20, 2000, Bridgeport apparently acquired by written assignment the writer's share of "You'll Like It Too" from Haskins, Simmons and Thomas. After receiving the 1993 assignment and the 2000 assignment, Bridgeport registered them with the copyright office in July 2000. Although there was a 7-year delay in registering the first assignment, it does not appear that there is a statutory requirement to register the assignment of a copyright, but that the only challenge to an assignment of a copyright is that which the parties thereto may raise (Docket Entry No. 124, p.3, fn 4).

Although there seems to be some dispute as to the exact percentage of ownership and rights Bridgeport has in the copyrighted work, there seems to be no dispute that Bridgeport has at least some legal interest in the work "You'll Like It Too."

It is alleged that "You'll Like It Too" was improperly copied into a work by Eric B. & Rankim's performance of "I Know You Got Soul." It is this song "I Know You Got Soul" that Bridgeport alleges was thereafter incorporated into various of the albums cited above, although they now admit they erroneously included some works by James Brown with the same name "I Know You Got Soul."

It also appears that, since the filing of this lawsuit, Bridgeport now claims that they have discovered additional infringements, which are the subject of a separate lawsuit. <u>Bridgeport Music, Inc. v. Robert Hill Music, et al.</u>, Case No. 3:05-0377. While Bridgeport attempted to include allegations of these

5

Case 3:01-cv-00916   Document 153   Filed 03/28/06   Page 5 of 13 PageID #: 957

new releases into this case, the District Judge denied that motion and directed them to proceed with a separate suit, if they wished to litigate that matter (Docket Entry No. 83). The pending motions for summary judgment do not reach any allegations contained in Case No. 3:05-0377.

The statement of facts by counsel in their respective memoranda supporting and opposing summary judgment (Docket Entry Nos. 113 and 124) read much like ships passing in the night. Likewise, the respective responses to statements of undisputed facts (Docket Entry Nos. 133 and 134) are also less than helpful in attempting to determine what is undisputed and what is not undisputed in this matter. Bridgeport's responses tend to dispute almost every statement by the defendants and include the boilerplate statement "Plaintiff, Bridgeport, objects to the statements on the grounds that the statement asserted by USOP is not supported by the citation to the record." In general, the Magistrate Judge finds that USOP's statements are supported in the record. This is a less than helpful response.

The defendants' response (Docket Entry No. 134) is somewhat better, inasmuch as they answer a number of statements with the response "Undisputed for purposes of the motion, but irrelevant." However, they lapse in some cases (e.g., statement 12) into a response of "Undisputed for purposes of the motion, but irrelevant," and then proceed with a page of legal argument. If it is undisputed for the purpose of the motion, it is undisputed and

6

needs no further explanation. They likewise dispute some statements, such as 14, with the statement "Disputed, but irrelevant." Again, the parties should follow the Local Rules and either answer disputed, undisputed, or undisputed for the purpose of the motion. Where there is a dispute, there should be a concise statement of the dispute and the basis therefor. Lengthy legal arguments are not necessary or wanted in the statement of uncontested facts.

Both parties, quite frankly, damage their cases with excessive verbiage. This material is difficult enough to plow through on a calm sea without the parties endeavoring to create unnecessary waves. When counsel engage in such verbosity, they can hardly fault the Court for failing to pick up the real heart of their argument.

Both sides accuse the other of unnecessary asides and jibes in their pleadings. Both parties are quite correct in these mutual assertions.

### III. LEGAL DISCUSSION

The one thing the parties seem to agree on is the standard for summary judgment, as set forth in <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Although even here the responding party has to set out its own version rather than simply accepting the other side's version. In any case, the Magistrate Judge has applied the <u>Anderson</u> test and understands that a motion for summary judgment should be granted if the pleadings,

7

depositions, answers to interrogatories and admissions on file, together with the affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The defendants' argument on laches is that after the production of the copyrighted work "You'll Like It Too" in 1981, if there was an infringement through the sampling of a portion of this work, it occurred with the production of "I Know You Got Soul" in 1987.[2]

The defendants contend that the production of "I Know You Got Soul" in 1987 was a smash hit, which spent 10 weeks on the Billboard R&B/Hip Hop Chart, 11 weeks on the Billboard Hot Dance Music/Maxi-Singles Sales chart, and 6 weeks on the Billboard Hot Dance Music/Club Play chart. The album was certified "Gold," which meant that more than 500,000 copies had been shipped to retail stores by December 1987. By the end of 1987 it also ranked number 8 on the Billboard Top Black albums chart, and spent nearly 9 months on the Billboard 200 chart of the nation's top selling albums. Also, more than a year after its release at the end of 1988, "Paid In Full" was still among the top 10 best selling rap albums.

The defendants contend that the individuals having an interest in "You'll Like It Too" should have been aware of the

---

[2]Whether there is or is not a sampling is not at issue in this particular motion. For the purpose of this motion, the Magistrate Judge assumes that there was a sampling.

8

infringement in this song at that time, whether they actually were or not.

The defendants argue even more strenuously that the doctrine of laches applies beginning in 1992, when Bridgeport began investigating and pursuing copyright infringement claims, including its claims against Eric B. & Rankim, who are alleged to be responsible for the improper sampling of "You'll Like It Too" in their production of "I Know You Got Soul." Bridgeport counters with the argument that it was not a copyright owner of "You'll Like It Too" until 1993 and therefore could not have known and had no obligation to know of any infringement in 1987 or 1992.

Bridgeport argues that they own literally thousands of copyrights and that it is virtually impossible to learn at any one time whether a small snippet of one of their works has been improperly sampled into another work.

The Magistrate Judge believes that the proof is insufficient at this stage to show as a matter of law that any party should have known of the alleged sampling. It may well be that proof at trial will show that, but it is not shown sufficiently at this point for summary judgment. If the prior owner knew or should have known of the sampling, Bridgeport would likely be charged with that knowledge. Otherwise, the entire issue of laches could be circumvented by a transfer to a third party.

The Magistrate Judge, after reviewing the record, believes there are factual disputes that prohibit the awarding of

9

summary judgment on the theory of laches. Bridgeport admits that it had actual knowledge as of March 6, 2001, however, they deny that they, or their predecessors, knew or should have known of the matter earlier. Ms. Peterer's declaration, as well as the other various declarations (Docket Entry No. 125) raise factual issues which the Magistrate Judge does not believe can be resolved by summary judgment. The Magistrate Judge agrees in general with the plaintiffs' legal arguments on this issue, as set forth in Docket Entry No. 124, pp. 12-19.

Although the defendants make a fairly strong case that the plaintiffs should have known prior to March 6, 2001, it is simply not strong enough for the Magistrate Judge to conclude that a reasonable jury could not find for the plaintiffs on that issue.

Turning next to the issue of the statute of limitations, the Magistrate Judge believes that the defendants are entitled to summary judgment on all claims arising more than 3 years prior to the filing of this lawsuit. The parties do agree that the statute of limitations is 3 years. However, once again, the parties differ as to what the starting date should be. Clearly, the most definitive date is the date of the filing of this litigation, May 4, 2001.

The plaintiffs claim that they should be able to go back 3 years from the date they actually discovered the infringement, which was March 6, 2001.

The Magistrate Judge believes that the appropriate date is the date of the filing of the lawsuit and that the defendants would be entitled to summary judgment for activities occurring prior to May 4, 1998. See Merchant v. Levy, 92 F.3d 51, 57, n.8 (2d Cir. 1996); Iverson v. Grant, 946 F.Supp. 1404, 1415-16 (D.S.D. 1996); and Wood v. Santa Barbara Chamber of Commerce, Inc., 507 F.Supp. 1128, 1135(D. Nevada 1980).

The defendants' best argument on the statute of limitations involves their argument that this Court has previously held that the receipt of income does not amount without more to infringing conduct within the period of the limitation. Bridgeport Music, Inc. v. Warner Brother Music Corporation, Case No. 3:01-0706, Docket Entry No. 392, pp. 4-5. As Bridgeport points out, however, in this case in addition to receiving income, the defendants admit that they also disbursed royalties. Although both parties touch on the disbursing royalties issue, neither side specifically cites to evidence as to the size of the royalties, the amount disbursed, or to whom they were disbursed in their briefs. The Sixth Circuit in Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615 (6th Cir. 2004), did not affirm this theory although they did not discount it. The Sixth Circuit in discussing it pointed out that the amount of royalties received in that matter were trivial. Total royalties were $14.91 and only $.81 were royalties within the statute of limitations. There was

11

no evidence in those cases that there were any disbursement of royalties.

Without some factual basis as to the circumstances concerning the disbursed royalties, the Magistrate Judge cannot conclude that the defendants are entitled to summary judgment on this issue. It appears that there is something more than the receipt of income in this matter.

Finally, the defendants make an argument that they have been prejudiced by delays in this matter, pointing to the possibility that witnesses will no longer recall the evidence, that records may have been misplaced or destroyed in the interim, and that in reliance on the fact that no lawsuit was filed, they have made changes in their various positions. Of course in securing copyrighted materials, companies routinely secure indemnity agreements from the prior parties, and as part of due diligence can make their own checks. Given the nature of this type music, the risk of sampling is clear.

After considering all of these issues, the Magistrate Judge does not believe that the defendants have made a sufficient showing that they have been unduly prejudiced.

By limiting the claims to the 3 years prior to the filing of this lawsuit, the loss of records and loss of memory should be minimized and no more harmful to the defendants than to the plaintiffs.

## IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge **recommends** that the motion for summary judgment on the ground of laches be **denied**; that the motion for summary judgment insofar as it applies to the statute of limitations be **granted** for any claims accruing prior to May 4, 1998; and be **denied** as to any claims accruing after May 4, 1998.

In addition, it is **recommended** that the plaintiffs file with the Court a formal notice of which infringing works they contend are still viable in this matter, in view of the Magistrate Judge's recommendation, if it is approved.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986).

**ENTERED** this 28th day of March, 2006.

/s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge

13